Lincoln Roy **BUCKLEY** and Everlast Saw & Carbide Tools, Inc., Plaintiffs,

v.

Thomas C. **GIBNEY**, Deputy District Director, Immigration and Naturalization Service, Defendant.

No. 71 Civ. 470.

United States District Court, S. D. New York.

March 22, 1971.

792

Jacobs, Jacobs & Giulini, Brooklyn, N. Y., for plaintiffs.

Whitney North Seymour, Jr., U. S. Atty., for United States; Stanley H. Wallenstein, Asst. U. S. Atty., of counsel.

WYATT, District Judge.

This is a motion (heard on February 16, 1971) by Lincoln Roy Buckley and by Everlast Saw and Carbide Tools, Inc. (Everlast) for a preliminary injunction to stay the defendant Thomas Gibney, Deputy District Director of the Immigration and Naturalization Service (Service), from enforcing a warrant of deportation issued against Buckley on January 18, 1971. In response, an Assistant United States Attorney, representing Deputy District Director Gibney, filed an affidavit contesting Buckley's claims and requesting that the complaint be dismissed. The administrative file has also been submitted.

There is substantial agreement concerning the events out of which this action arose.

Buckley came to the United States as a visitor for pleasure (8 U.S.C. § 1101 (a) (15) (B); 8 CFR § 214.2(b)), entering the country on September 16, 1967. Soon thereafter, he accepted his present job in New York City. This was a violation of a condition for his entry into this country and made Buckley deportable under 8 U.S.C. § 1251(a) (9). His visa for a pleasure visit authorized Buckley to remain in the United States until October 15, 1967. He applied for an extension, evidently by deceiving the Service, and secured an extension until February 28, 1968.

In early 1968, Buckley applied for and received a certification from the Secretary of Labor under 8 U.S.C. § 1182(a) (14). This certification was that there were not sufficient workers in the United States who were able, etc. to do the type of work that Buckley was capable of performing and that Buckley's employment would not adversely affect the wages or working conditions of those workers already in the United States. This certification satisfied one of the conditions for Buckley to receive a visa. 8 U.S.C. § 1182(a).

On April 12, 1968, Everlast, Buckley's employer, filed a petition on Buckley's behalf for a visa under 8 U.S.C. § 1153 (a) (6) "skilled or unskilled labor" in the words of the statute and sometimes called a "sixth preference visa". This petition was approved by the Service on February 5, 1969. This approval meant that Buckley could receive a sixth preference visa when and if one became available for that class. It is extremely unlikely, however, that any visa will be available in the foreseeable future to citizens of British Honduras in the sixth preference class. The statutes permit two hundred immigration visas to be issued to citizens of British Honduras each year. 8 U.S.C. § 1152(a), (c). According to the affidavit of an Assistant United States Attorney, these two hundred visas are all taken up by those in the first preference class; thus, there is little reason to expect that Buckley, with a sixth preference, will ever be able

to get a visa. It was doubtless for this reason that Buckley remained in the United States, despite the fact that his visitor's visa was no longer valid.

On June 9, 1970, the Service initiated deportation proceedings against Buckley by issuing an order to show cause. It was averred (properly it seems) that Buckley was in the country in violation of law and could be deported under 8 U.S.C. § 1251(a) (2). A hearing was held before a Special Inquiry Officer of the Service on June 16, 1970. At that time Buckley, who was then represented by counsel, admitted that he was deportable. He was granted voluntary departure (8 U.S.C. § 1254(e)) on the condition that if he did not leave the country on or before July 16, 1970 he would be deported. Buckley waived his right to appeal and the order became final. 8 CFR § 242.20.

Before the July 16 date, Buckley submitted motion papers requesting an extension of time for voluntary departure, a stay of deportation, and a reopening of the deportation proceedings. The basis for these requests was that he should be granted a status adjustment under 8 U.S.C. § 1255. The cited section permits the Attorney General to adjust the status of certain aliens "to that of an alien lawfully admitted for permanent residence."

As to that part of the motion requesting that the proceedings be reopened, there was a referral to a Special Inquiry Officer. On July 17, 1970, he denied the motion on the ground that Buckley was "statutorily ineligible for adjustment of status by reason of the unavailability of" immigration visas to those other than those with first preference. Buckley appealed this decision to the Board of Immigration Appeals which affirmed the order on December 11, 1970.

Meanwhile, that part of the motion requesting an extension of time for voluntary departure and for a stay of deportation had been denied by an Assistant Deputy District Director for Deportation on July 7, 1970. He also noted that Buckley was not eligible for status adjustment under 8 U.S.C. § 1255.

On January 18, 1971, the Deputy District Director issued a warrant for Buckley's deportation. On January 20, 1971, the Service notified Buckley that he was to report for deportation on February 2, 1971.

By motion filed on January 28 and directed to the District Director and Special Inquiry Officer, Buckley requested reinstatement of voluntary departure, a stay of deportation, and a reopening of the deportation proceeding, with permission to argue orally before the Board of Immigration Appeals if his motion were denied. On January 29, 1971, the Deputy District Director denied the motion as to a request for voluntary departure and for a stay. The application to reopen the proceedings was directed to the Board as was at that point required by 8 CFR § 3.2. On February 5, 1971, the Board filed an order denying this application.

On February 1, 1971, Buckley filed a petition for review in the Court of Appeals, Second Circuit (Docket No. 71-1104). This automatically stayed his deportation. 8 U.S.C. § 1105a(a) (3). On February 4, 1971, he stipulated to withdraw this petition with prejudice.

On the day his petition to the Court of Appeals was withdrawn, Buckley commenced this action and obtained from Judge Bryan an order to show cause with a temporary restraining order, staying his deportation.

Buckley asserts numerous grounds for a preliminary injunction. He claims that he is being deprived of due process and equal protection in that the Service often stays deportation and grants voluntary departure to holders of approved third preference petitions but refused to grant it to him. (He holds an approved sixth preference petition.) He contends that these same constitutionally protected rights were also violated in that, as a native of a dependent area (British Honduras is a British dependency), he was subject to different quota

requirements than he would have been had he been a citizen of an independent country. According to Buckley's complaint, these same requirements also violate the Civil Rights Act. Buckley next contends that deportation is cruel and unusual punishment and therefore is in violation of the Eighth Amendment. Finally, he has a meaningless complaint about execution of an order "while a motion and subsequent appeal was pending".

Buckley's employer, Everlast, also requests a preliminary injunction, apparently on the ground that to deport Buckley would be an interference with its employment contract with Buckley.

The claims of these movants are without merit. The motion will be denied.

■ Movants assert jurisdiction under several statutes. 8 U.S.C. § 1329 confers jurisdiction of "all causes, civil and criminal, arising under any of the provisions of this subchapter" on the United States District Courts. There is jurisdiction under that statute. Cheng Fan Kwok v. Immigration and Naturalization Service, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968).

■ Buckley's first claim is based on his belief that it was improper for the Service to deny his application for a stay of deportation and voluntary departure when, he asserts, it is the practice to grant these requests to beneficiaries of approved third preference petitions. The Service admits that it is the normal practice to grant "voluntary departure for an indefinite period until an immigrant visa is available" [Operation Instruction 242.10(b) (1)] to any alien (with a few exceptions not relevant here) "who is the beneficiary of an approved third-preference petition" [Operation Instruction 242.10(a) (6) (i)] or who is "the beneficiary of an approved sixth-preference petition who satisfies Travel Control * * * that he can qualify for third preference and who cannot obtain a visa solely because a visa number is unavailable". [Operation Instruction 242.10(a) (6) (iii)]. Au-

thority to promulgate these Operation Instructions was delegated to the Commissioner of Immigration and Naturalization by the Attorney General pursuant to 8 CFR § 2.1.

Clearly Buckley can claim no rights under Operation Instruction 242.10(a) (6) (i); he does not hold an approved third preference petition. He likewise can claim no benefit from Operation Instruction 242.10(a) (6) (iii) because he has not satisfied (and could not satisfy) Travel Control that he can "qualify for third preference".

Buckley cannot qualify for third preference. Third preference is accorded to "members of the professions" and those with "exceptional ability in the sciences or the arts". 8 U.S.C. § 1153(a) (3).

■ In the context of this statute, the term "professions" includes architects, engineers, lawyers, physicians, and teachers. 8 U.S.C. § 1101(a) (32). Although undoubtedly other callings could be included in the term, the job of mechanic and tool maker is not generally considered one of the "professions" and should not be included in that term.

■ It is more plausible to argue that a highly skilled mechanic and tool maker like Buckley is one with "an exceptional ability in the arts or the sciences". It would require, however, a radical expansion of the terms "the sciences" and "the arts" to include a mechanic and tool maker. Such an expansive reading of these terms is not suggested by the statute, which provides for those with skills such as those of Buckley by granting them a sixth preference visa. This sixth preference is granted, among others, to those "who are capable of performing specific skilled * * * labor". 8 U.S.C. § 1153(a) (6). Buckley, a mechanic and tool maker, clearly comes within the sixth preference category of "skilled * * * labor" and not in the third preference category of professionals, scientists, and artists.

■ Furthermore, even had Buckley qualified for third preference, he would not necessarily have been granted the

privilege of voluntary departure. Operation Instruction 242.10. The evidence shows that a refusal to grant this privilege to Buckley would not have amounted to any abuse of discretion. Buckley had entered the country as a visitor and had almost immediately violated a condition of his visa by beginning to work for Everlast. He was later granted the privilege of voluntary departure; he failed to take advantage of it. His family is in British Honduras. There is ample reason for the exercise of discretion to refuse the privilege of voluntary departure to someone who had abused other privileges previously extended to him.

Buckley did not qualify for indefinite voluntary departure under the Operation Instructions issued by the Commissioner of Immigration and Naturalization and the evidence before this Court indicates that he never could have so qualified. Any claim that these instructions were applied to him in a discriminatory fashion must fail.

█ It appears that Buckley is really contending that the distinction drawn by the Operation Instructions between those who qualify for third preference visas and those highly skilled laborers who (like Buckley) qualify for sixth preference visas is arbitrary and unreasonable. The same distinction was drawn by Congress in the statute itself; those who qualify for a third preference are directed to be allotted immigration visas before those who qualify for a sixth preference (8 U.S.C. § 1153). The Operation Instructions simply use the order established by Congress as a basis for determining whether voluntary departure should be granted. It is not arbitrary or unreasonable to give a greater preference to members of the "professions" and to highly skilled scientists or artists than that given to skilled laborers.

The Service has the right to grant the privilege of voluntary departure to those who are felt to be deserving of this privilege. 8 U.S.C. § 1254(e); 8 CFR § 224. The Service has establishd a ra-

tional basis for deciding when this benefit should be extended; adherence to the rules means that the privilege is not extended to Buckley. Neither the rules nor their application to Buckley violate any constitutional right possessed by this alien.

Next, Buckley claims that as a native of a dependent area in the Western Hemisphere he is being discriminated against because there are different quota limitations on dependent areas than on independent countries.

There are indeed such differences. Immigration visas to natives of a dependent area of a foreign state are limited to one per centum of the total immigration visas available to that foreign state. 8 U.S.C. § 1152(c). This means that no more than 200 immigration visas can be given to natives of any dependent area. 8 U.S.C. § 1152(a). At the same time, Congress has provided that natives of independent countries of the Western Hemisphere are subject only to an annual hemisphere quota of 120,000 (79 Stat. 921).

█ That Congress has established differing quotas for immigrants, depending on whether they are natives of dependent areas or of independent countries, is not unconstitutional. "The exclusion * * * of aliens pursuant to statute falls within that category of policy decisions which, 'so far as the subjects affected are concerned, are necessarily conclusive upon all * * * [the government's] departments and officers,' including 'the judiciary.'" Hitai v. Immigration and Naturalization Service, 343 F.2d 466, 467 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965) quoting The Chinese Exclusion Case, 130 U.S. 581, 606, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). Congress has made the distinction. It was entirely within its power in so doing. This Court ought not to interfere in such a policy decision.

█ Buckley also contends that to deport him would violate his rights under the "Civil Rights Act of 1870". Ap-

parently he is referring to 42 U.S.C. §§ 1981 to 2000h–6 when he speaks of the "Civil Rights Act". Sections 1981 and 1983 are the only applicable sections. Section 1981 provides that the same rights and privileges under the law shall extend to all persons within the jurisdiction of the United States. Section 1983 establishes a civil cause of action for those whose rights have been invaded.

It is difficult to see how Buckley has been deprived of any right or privilege. He has raised no objection to the conduct of the various proceedings before the immigration authorities and the records of these proceedings establish that they met the requirements of procedural due process. This alien has not shown any violation of his rights; he has been leniently treated under valid immigration statutes and regulations. His claim under the Civil Rights Act is without basis.

■ Next, Buckley asserts that deportation is cruel and unusual punishment in violation of the Eighth Amendment. This argument is completely without merit. Deportation has been "consistently classified as a civil rather than a criminal procedure." Harisiades v. Shaughnessy, 342 U.S. 580, 593, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1951). Thus, even though it may have severe consequences, deportation is not punishment for a crime but a method of returning to his own country an alien not entitled to remain here. Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905 (1892); Cortez v. Immigration and Naturalization Service, 395 F.2d 965, 967 (5th Cir. 1968); Burr v. Immigration and Naturalization Service, 350 F.2d 87, 91 (9th Cir. 1965), cert. denied, 383 U.S. 915, 86 S.Ct. 905, 15 L.Ed.2d 669 (1966). Since it is not punishment, deportation cannot be cruel and unusual punishment.

■ Finally, Buckley has a claim in meaningless words which seem to say that he is permitted to appeal the Board's December 11, 1970 order within six months from that date and that to de-port him before his appeal time expires is to deprive him of his right to appeal. This contention is dubious at best; if accepted, it would mean that a person threatened with deportation could indefinitely postpone deportation by simply filing motions and appeals at the proper time. More importantly, Buckley no longer has any right to appeal the December 11, 1970 decision because he did file a petition for review with the Court of Appeals and on February 4, 1971 stipulated to withdraw that petition with prejudice.

■ Although not mentioned in either the complaint or in the affidavits, movant's brief contains an allegation that Buckley is being deported "in accordance with * * * secret rules and regulations" (Plaintiffs' Memorandum of Law, at 22). These "secret rules and regulations" are identified as the Commissioner's Operation Instructions. Buckley is not being deported, however, under any Operation Instructions; he is being deported under the statute, 8 U.S.C. § 1251 (a) (2), because he is illegally in the country. These Operation Instructions affect Buckley only insofar as they serve as a guide in considering his request for voluntary departure; their only effect is that they fail to recommend the extension of the privilege of voluntary departure to beneficiaries of approved sixth preference petitions. The Operation Instructions do not require that requests by such beneficiaries be denied; they simply encourage the granting of requests by beneficiaries of greater preferences. Buckley has not been injured by these Operation Instructions and may not avoid being deported on the ground that he did not know the contents of these instructions.

■ Everlast also requests this preliminary injunction. It asserts that to deport Buckley would interfere with its contractual relations with him. Granting this to be true, it is difficult to see from this fact any reason to stay a warrant of deportation for an alien illegally in this country. The fact that Everlast

hoped to continue to benefit from Buckley's illegal presence in the United States is not sufficient reason to allow him to remain in the country.

The foregoing contains the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

The motion for a preliminary injunction is denied and the temporary restraining order is vacated.

So ordered.