Rodolphe NOEL et al., Plaintiffs,

v.

James F. GREEN, as Commissioner of the Immigration & Naturalization Service, and Sol Marks, as New York District Director of the United States Immigration & Naturalization Service, Defendants.

No. 73 Civ. 3682.

United States District Court, S. D. New York.

Feb. 6, 1974.

Pollack & Kramer, Brooklyn, N. Y., for plaintiffs; Austin T. Fragomen, Jr., Martin L. Rothstein, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for defendants; Stanley H. Wallenstein, Special Asst. U. S. Atty., Joseph P. Marro, Asst. U. S. Atty., of counsel.

## OPINION

GAGLIARDI, District Judge.

This is an action by Rodolphe Noel, Emiris Noel, Eddy Antoine Petit and

Yanick Petit on behalf of themselves and other aliens similarly situated challenging the policy of the Immigration and Naturalization Service (hereinafter the Service) which denies to Western Hemisphere aliens married to permanent resident aliens and illegally in this country awaiting issuance of a visa the discretionary relief of an extended departure date, except upon a showing of compelling factors. By motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure plaintiffs seek an order restraining the deportation of Rodolphe Noel and Eddy Antoine Petit and restraining the implementation of the policy pending the determination of this declaratory judgment action. The motion for preliminary relief is denied upon examination of the affidavits submitted by the parties. Dopp v. Franklin National Bank, 461 F.2d 873, 879 (2d Cir. 1972).

Rodolphe Noel, a native and citizen of Haiti, was admitted to this country as a non-immigrant visitor in May, 1969 on a two month temporary basis. Having remained longer than permitted, Noel was eventually apprehended by the Service on June 15, 1972, and deportation proceedings against him were commenced the following day. During the course of the proceedings, Noel applied for and was granted the discretionary relief of voluntary departure pursuant to which he was to depart by September 27, 1972, or, failing to do so, a deportation order to Haiti would become effective. A warrant of deportation was issued, effective August 21, 1973, when Noel failed to comply with the order. On August 20, 1973 Noel requested the District Director to extend the date for his voluntary departure on the basis of his marriage on April 19, 1973 to plaintiff, Mrs. Emiris Noel, a permanent resident alien of the United States until such time as a visa became available. The application was denied.

Plaintiff, Eddy Antoine Petit, a native and citizen of Haiti, is also presently sub-

ject to a warrant of deportation. Similarly admitted for two months as a non-immigrant visitor in August, 1970, Petit remained longer than permitted, and he was apprehended by the Service on June 7, 1973. At his deportation hearing, Petit also applied for and was granted the discretionary relief of voluntary departure. He was given thirty days in which to leave, or in the alternative, an order of deportation to Haiti would issue. Prior to the expiration of the thirty day period, Petit married plaintiff, Mrs. Yanick Petit on June 26, 1973. Proceeding on the same basis as plaintiff Noel, Petit made an application for suspension of voluntary departure until a visa became available. Petit's request was denied, and departure was set for July 27, 1973. Following his failure to depart, the Service issued a warrant of deportation effective September 5, 1973. Deportation of both Noel and Petit has been voluntarily stayed by the Service pending decision on this motion.

Section 244(e) of the Immigration and Nationality Act, 8 U.S.C. § 1254(e), provides that in the course of a deportation proceeding an alien may apply for the privilege of voluntary departure. The Regulations permit the Special Inquiry Officer in his discretion to specify the time within which the alien must depart. 8 C.F.R. § 244.1 (1973). "Authority to extend the time within which to depart voluntarily specified initially by a special inquiry officer or the Board is within the sole jurisdiction of the district director." 8 C.F.R. § 244.2 (1973).

To mitigate the hardship an order of deportation has on a Western Hemisphere alien married to a permanent resident alien and illegally in this country, the District Director in New York followed a policy from 1968 through part of 1972 of granting an extension of voluntary departure to those deportable aliens pending issuance of a permanent visa.[1]

---

1. The affidavits of the parties are unclear as to what periods of time a formal policy to grant deferred departure was effective prior

to 1972. It is certain, however, that New York's District Director routinely granted lenient treatment. (Government's Exhibit N,

However, hearings conducted by the Subcommittee on Immigration and Nationality of the House of Representatives Committee on the Judiciary in early 1972 revealed the adverse effect such a policy was having on the domestic labor market. Moreover, by 1972 the large number of persons from the Western Hemisphere seeking the limited number of available visas resulted in a substantial waiting list.[2] Based on this information and a recommendation of the Subcommittee's Chairman, Congressman Peter W. Rodino, Jr., the Service established guidelines with respect to extended voluntary departures effective August 1, 1972. Under the altered policy, an alien's status of marriage to a permanent resident alien is insufficient in itself to warrant deferred departure; stays are to be granted only in individual cases upon a showing of compelling factors. See Memorandum, Associate Commissioner, Operations to All District Directors, et al., July 17, 1972, p. 2.

In response to pending legislation introduced in Congress which will significantly change the status of Western Hemisphere aliens with respect to preference quotas[3] and adjustment of status,[4] and upon the recommendation of Congressman Rodino, the Service announced on April 11, 1973 that Western Hemisphere alien spouses of permanent resident aliens could, as a matter of discretion, be granted an extended voluntary departure. Less than two weeks later, the Service confined the modification to those aliens who were in the country and married to a permanent resident alien as of April 10, 1973. Telegram dated April 20, 1973 from Acting Commissioner Greene. All other Western Hemisphere aliens who entered the country and married a permanent resident alien after that date are treated under the policy effective August 1, 1972. The Service maintained that this modification was adopted to delay "enforcement of departure of specified relatives who are already in the United States," but "not adopted as an invitation to aliens to thereafter enter this country." See Memorandum, Associate Commissioner, Operations to Regional Commissioner, San Pedro, California, May 16, 1973, p. 2.

Letter Regional Commissioner, Burlington, Vermont to District Director, New York, June 9, 1972). For purposes of this motion it is unnecessary to determine whether a policy of leniency was consistently followed by district directors prior to July 31, 1972, or whether inconsistent policies were followed by district directors in the exercise of their discretion.

2. Under the amendments to the Immigration and Nationality Act in 1965, Western Hemisphere aliens are treated separately for purposes of permanent visas from the rest of the world, and a numerical limitation is established to be filled on a first come, first served basis. Section 101(a)(27) and 201(a) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(27) and 1151(a). For aliens from the Western Hemisphere as well as other aliens, who wish to immigrate for the purpose of entering the domestic labor market, the statute requires a labor certification from the Secretary of Labor to the effect that entry will not adversely affect the domestic labor market. Western Hemisphere aliens who are parents, spouses or children of United States citizens or of permanent resident aliens are excepted from this re-

quirement. Section 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14). Whether certified or excepted from certification, issuance of visas to Western Hemisphere aliens is subject to the numerical limitations in the statute.

3. Under proposed H.R. 981, the two separate quotas for Western Hemisphere aliens and "Worldwide" aliens would be replaced by one overall numerical ceiling. The visa preference presently applicable to only Worldwide aliens, which accords alien spouses of permanent resident aliens preference, will apply to Western Hemisphere aliens as well. Under the proposal, immediate relatives of permanent resident aliens will be given first preference status.

4. Under proposed H.R. 982, Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255 which presently permits certain aliens under prescribed conditions to adjust to a permanent status while in this country will apply to Western Hemisphere aliens. The exclusion of Western Hemisphere aliens from this benefit under the present law has given rise to the problems underlying the issues in this case.

Under Section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b), aliens who are the children, spouses or parents of United States citizens are classified as "immediate relatives" and may be granted immigrant visas without regard to numerical limitations or the hemisphere of origin. Once so classified, such relatives may obtain a permanent visa within a matter of months. Consequently, an alien spouse of a United States citizen is generally accorded an extension of voluntary departure pending issuance of a permanent visa.

Plaintiffs contend that the August 1, 1972 policy and its April 10, 1973 modification constitute: (1) an arbitrary, capricious and gross abuse of administrative discretion; (2) a violation of the constitutional guarantee of equal protection of laws; (3) a violation of the publication requirement of the Administrative Procedure Act, 5 U.S.C. § 553; and (4) a violation of the constitutional principle of separation of powers, see Kilbourn v. Thompson, 103 U.S. 168, 190, 26 L.Ed. 377 (1881).

"[T]he two-fold requirement for a preliminary injunction is a demonstration of probability of success on the merits and a showing that irreparable harm will result if such relief is denied." Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Company, Inc., 476 F.2d 687, 692 (2d Cir. 1973).

■ First, plaintiffs maintain that the differences in treatment between alien spouses of United States citizens and alien spouses of permanent resident aliens, and within the latter category, between aliens present in the country and married as of April 10, 1973 and those who arrive or marry after that date constitute a gross abuse of discretion and are unlawful. The Second Circuit has held that in the grant or refusal of voluntary departure, the Service and the administrator may establish groups of persons entitled to discretionary relief so long as the classifications are rationally related to the statutory scheme. Buck-

ley v. Gibney, 332 F.Supp. 790 (S.D. N.Y.), aff'd *per curiam*, 449 F.2d 1305 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 946, 30 L.Ed.2d 789 (1972); Fook Hong Mak v. Immigration and Naturalization Service, 435 F.2d 728 (2d Cir. 1970); Lam Tat Sin v. Esperdy, 334 F.2d 999 (2d Cir. 1964).

The treatment of married Western Hemisphere aliens for purposes of extended voluntary departure on the basis of classification of spouse is reasonable in view of the statutory scheme which places no immigrant visa quota on spouses of citizens, but imposes a numerical limitation on spouses of permanent resident aliens. In practical terms, the apparent difference in time required to obtain a permanent visa substantiates the differentiation. Furthermore, it is certainly within the Service's discretion to conclude that other considerations may at some time warrant lenient treatment, but that to grant it in all situations would encourage aliens to enter illegally, and acquire the status, and would open a loophole in disregard of the statute.

Plaintiffs' second argument is that the two classifications in issue deny plaintiffs the constitutional guarantee of equal protection of the laws. In Borass v. Village of Belle Terre, 476 F.2d 806 (2d Cir.) rehearing en banc denied, prob. juris. noted, 414 U.S. 907, 94 S.Ct. 234, 38 L.Ed.2d 145 (1973) (No. 191), the Second Circuit held that: "If the classification, upon review of facts bearing upon the foregoing relevant factors, is shown to have a substantial relationship to a lawful objective and is not void for other reasons, such as overbreadth, it will be upheld." 476 F.2d at 814. Distinctions drawn for the purpose of granting stays of deportation have consistently passed constitutional muster in this Circuit. Buckley v. Gibney, *supra*, 332 F.Supp. at 795; Application of Amoury, 307 F.Supp. 213 (S.D.N.Y.1969) (Weinfeld, J.); see Faustino v. Immigration and Naturalization Service, 432 F.2d 429 (2d Cir.), cert. denied, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971); Hitai v. Immigration and Naturalization Serv-

ice, 343 F.2d 466 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965); accord, Perdido v. Immigration and Naturalization Service, 420 F.2d 1179 (5th Cir. 1969). The classifications in this case are no less substantially related to the statutory scheme which treats relatives of citizens differently from relatives of permanent resident aliens than those classifications based on other statutory distinctions which distinguish between the nature of the work one performs, see Buckley v. Gibney, *supra,* or the citizenship of one's parents, see Application of Amoury, *supra.*

Third, plaintiffs contend that the August 1, 1972 policy and April 10, 1973 modification are invalid since the Service failed to publish the "rules" on thirty days' notice in accordance with the provisions of the Administrative Procedure Act, 5 U.S.C. § 553(b), (d). Under the test set forth in Lewis-Mota v. Secretary of Labor, 469 F.2d 478 (2d Cir. 1972), whether given instructions are to be considered a "rule" under 5 U.S.C. § 551(4) or within the exception for a "general statement of policy" under 5 U.S.C. § 553(b), the Court must look to the "substantial impact of the action" on the "existing rights and obligations of the parties." 469 F.2d at 482. In *Lewis-Mota,* aliens admitted to this country with labor certifications based on a pre-certified list of jobs in short supply found themselves no longer certified (after their temporary visas expired). following the Secretary of Labor's suspension of the precertified lists without notice. The court invalidated the rule based on the Service's failure to publish it on thirty days' notice. Neither at the time the instructions were altered on August 1, 1972, nor at the time the Service determined to grant the benefit to those aliens who were already in the country and married to a permanent resident alien on April 10, 1973, were plaintiffs Noel and Petit married to permanent resident aliens. In fact, each may still be entitled under the Regulations to

a deferred voluntary departure on the basis of hardship, in the discretion of the district director, as is any deportable alien whether married or not. 8 C.F.R. §§ 244.1 and 244.2 (1973).

Plaintiffs' final argument that the Service abdicated its statutory responsibility to the Chairman of the Subcommittee on Immigration and Nationality in violation of the constitutional principle of separation of powers falls wide of the mark. While it is conceded that the Chairman made certain recommendations to the Service based on information gathered during congressional hearings, correspondence from the Service indicated that to the extent followed, the changes in the instructions were based on the information provided, and not upon an order from the House Subcommittee.[5]

Upon review of plaintiffs' arguments, the probability of ultimate success on the merits is not sufficiently likely to warrant the preliminary relief requested. Accordingly, the motion for a preliminary injunction is denied.

So ordered.

5. Memorandum, Associate Commissioner, Operations to All District Directors, et al., July 17, 1972, p. 1.