Lidia **PEDROZA–SANDOVAL,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE,** Respondent.

No. 73–2048.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1974.

Decided June 25, 1974.

John F. Ebbott, Milwaukee, Wis., for petitioner.

John L. Murphy, Chief, Government Regulations Section, Crim. Div., Mary Jo Grotenrath, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before CUMMINGS and TONE, Circuit Judges, and MATTHES, Senior Circuit Judge.*

MATTHES, Senior Circuit Judge.

Petitioner, Lidia Pedroza-Sandoval, is before this court to seek review of an order of the Immigration and Naturalization Service on May 7, 1973, commanding petitioner, a citizen of Mexico, to voluntarily depart from the United States or be deported to Mexico. Petitioner also attacks the affirmance of the INS order by the Board of Immigration Appeals on November 9, 1973. Jurisdiction of this court is founded upon 8 U.S.C. § 1105a(a).

Petitioner was born in Mexico in 1952. In 1955 her natural mother became ill and an aunt, Maria Mendez, assumed care of the petitioner. In August, 1971, when petitioner was 18, a formal adoption decree was filed in Mexico declaring that she was the adopted daughter of the aunt, who is a resident alien in the United States.

On July 9, 1971, petitioner entered the United States as a nonimmigrant visitor authorized to remain in this country until August 9, 1971. On April 4, 1973,

* Senior Circuit Judge M. C. Matthes, Eighth Circuit, is sitting by designation.

she was apprehended by INS officers for failing to depart in August 1971.

At a deportation hearing on May 3, 1973, petitioner sought "adjustment of status" pursuant to 8 U.S.C. § 1255 as an immediate relative of a United States resident alien; that is, the adopted daughter of her aunt, Maria Mendez. 8 U.S.C. § 1153. The Immigration Judge refused to consider the immediate relation petition because petitioner, as a native of a country in the western hemisphere, was ineligible for adjustment of status under § 1255. Since petitioner could show no other grounds precluding a finding of deportability, the Immigration Judge ordered her to depart or be deported.

The Board of Immigration Appeals dismissed an appeal from the order of the Immigration Judge. The Board made the further finding that petitioner could not be considered the "child" of Maria Mendez as that term is defined in the immigration laws, and therefore could not qualify as an immediate relative under § 1153, because she was not adopted by her aunt before the age of 14.

Section 1255 of Title 8 provides that the Attorney General in his discretion may adjust the status of an alien admitted into the United States to that of an alien lawfully admitted for permanent residence, if certain requirements are met. Section 1255(c), however, explicitly states that, "The provisions of this section shall not be applicable to any alien who is a native of any country of the Western Hemisphere. . . ."

The primary contention of the petitioner is that the denial to certain immigrants of the right to invoke the provisions of § 1255 because of their nativity in the western hemisphere is a denial of equal protection of the laws, in contravention of the due process clause of the fifth amendment.

◼ Although aliens enjoy certain fundamental constitutional rights while in the United States, it is long established doctrine that Congress has broad powers, subject only to very limited judicial review, in legislating on the matter of immigration laws and naturalization policies. *See, e. g.*, Kleindienst v. Mandel, 408 U.S. 753, 765–767, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L. Ed. 911 (1954); The Chinese Exclusion Case, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). The reason for the judicial recognition of this broad legislative power of Congress in regulating the admission and exclusion of aliens was explained in Harisiades v. Shaughnessy, 342 U.S. 580, 588–589, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952):

"It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."

Consequently, courts have held in cases involving varied factual circumstances that it is within the power and authority of Congress in legislating on immigration and naturalization to distinguish between natives of countries in the western hemisphere and natives of nations in the eastern hemisphere or even natives of dependent regions in this hemisphere. *See, e. g.*, Faustino v. INS, 432 F.2d 429 (2d Cir. 1970), cert. denied, 401 U.S. 921, 91 S.Ct. 909, 27 L. Ed.2d 824 (1971); Hitai v. INS, 343 F. 2d 466 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965); Buckley v. Gibney, 332 F.Supp. 790 (S.D.N.Y.) aff'd, 449 F.2d 1305 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 946, 30 L.Ed.2d 789 (1972). *See also* Talanoa v. INS, 397 F.2d 196, 201 (9th Cir. 1968).

◼ The legislative history indicates that § 1255 was amended in 1965 to dis-

able western hemisphere natives from using the section to adjust their immigration status because Congress perceived a "recurring problem" of natives of Central and South American lands, who usually can reach the United States more easily than eastern hemisphere natives, coming to this country as nonimmigrant visitors and promptly seeking permanent residence status under § 1255. *See* S.Rep.748, 89th Cong., 1st Sess., 1965 U.S.Code Cong. & Admin. News 3328 et seq. Congress could reasonably enact remedial legislation to curtail this perceived abuse of the immigration laws. It is not within the province of the judiciary to disturb such a policy decision by Congress.[1]

The orders of the Immigration Judge and the Board of Immigration Appeals are affirmed.

[1]. Our ruling that § 1255 is a valid exercise of Congressional power eliminates the necessity to consider petitioner's attack upon the finding of the BIA that she was not the "child" of Maria Mendez, since § 1255 bars any attempt by petitioner to seek adjustment of status as the immediate relative of Maria Mendez.

Likewise, we do not consider petitioner's contention that she is excluded from the visa provisions of 8 U.S.C. §§ 1151 and 1153 as a "special immigrant" and that such exclusion is a violation of the fifth amendment due process clause: § 1255 does not allow petitioner to seek adjustment of status under the provisions of §§ 1151 and 1153.