**Norman D. MacCAUD**

v.

**UNITED STATES of America.**

**Civ. No. B–558.**

United States District Court,
D. Connecticut.

Oct. 5, 1972.

Norman D. MacCaud, pro se.

Stewart Jones, U. S. Atty., Barry Cutler, Asst. U. S. Atty., New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The petitioner, presently incarcerated in the Federal Correctional Institution,

Danbury, Connecticut, has applied for an injunction, enjoining his deportation hearing scheduled for October 6, 1972, and for a writ of mandamus, ordering the Attorney General to perform certain acts pursuant to the provisions of 8 U.S.C. § 1253(g).

The moving papers indicate that the petitioner, who claims to be a citizen of both Canada and Ireland, illegally entered this country and was deported in 1963. Subsequently, he again unlawfully entered the United States, was arrested in January, 1972, and on June 5, 1972, was sentenced by the District Court for the Western District of New York, Henderson, J., to a one year term of imprisonment after his conviction under 8 U.S.C. § 1326.

After a hearing before a Special Inquiry Officer of the Immigration and Naturalization Service, the petitioner was ordered deported to Ireland, the country he designated under 8 U.S.C. § 1253(a). On May 5, 1972, the Deputy Consul General of Ireland informed the authorities that the Irish government "refused" to accept the petitioner on deportation. As a consequence, the Special Inquiry Officer scheduled another deportation hearing for October 6, 1972, to determine whether Canada is an appropriate secondary country for deportation. The instant proceedings were instituted and while the matter was being considered by this Court, the petitioner filed motions in the Western District of New York to block further administrative processing in his deportation action. On September 18, 1972, that court, Curtin, J., dismissed the petitioner's application.

■ On this state of the record, it would appear that the petitioner is not entitled to injunctive relief. All the proceedings to date comply with the requirements of § 1253 and the relevant case law. See, e. g., United States v.

Murff, 264 F.2d 926 (2 Cir. 1959); Bong v. Esperdy, 200 F.Supp. 273 (S.D.N.Y. 1961). Resort to the judicial process must await exhaustion of administrative remedies. 8 U.S.C. § 1104.

However, there are two complicating factors. On or about September 21, 1972, the United States Department of Foreign Affairs notified the petitioner that entry into Ireland was still open to him. Whether this communication is interpreted as a reversal of position by the Irish government, or a "clarification" of the Irish Deputy Consul's letter to the authorities sent on May 5, 1972, it would appear that the petitioner may now be eligible for deportation to Ireland and, therefore, the original deportation order should be reinstated. If, on the other hand, the new deportation hearing results in a deportation order to Canada, the legal effect of the notification from the Department of Foreign Affairs might well raise a justiciable issue.

■ Secondly, the petitioner contends that deportation to Canada would expose him to "persecution" in violation of 8 U.S.C. § 1253(h).[1] This claim, of course, may be raised before the Special Inquiry Officer for adjudication on the administrative level in the first instance.

■ In the light of these additional circumstances, the Court is of the opinion the petitioner's prayer for injunctive relief should be denied, but without prejudice to a renewed application if the situation so warrants after the October 6th deportation hearing is concluded and administrative remedies are exhausted. This procedure precludes premature judicial intervention into administrative affairs, and yet keeps an avenue open for judicial redress if justice requires.

■ With respect to the petitioner's request for a mandamus, the application is denied. If the petitioner eventually is deported to Ireland, the issue is moot.

1. (h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason.

In any event, § 1253(g) [2] does not appear to impose a ministerial duty upon the Attorney General which is properly the subject of a mandamus. As pointed out by government counsel, a mandamus under this statute would involve judicial interference in a matter of the highest diplomatic concern on an international level. The judiciary should be most reluctant to require executive action in this sensitive area unless the mandate of the statute is in positive language and plainly prescribed. Since the duty of the Attorney General under § 1253(g) is not clearly mandated by the wording of the statute, relief by way of mandamus must be denied. See, e. g., 28 U.S.C. § 1361; United States v. Walker, 409 F.2d 477 (9 Cir. 1969); Guffanti v. Hershey, 296 F.Supp. 553 (S.D.N.Y.1969).

Accordingly, the petitioner's application for injunctive relief is denied without prejudice; the petitioner's request for a mandamus is denied.

2. Upon the notification by the Attorney General that any country upon request denies or unduly delays acceptance of the return of any alien who is a national, citizen, subject or resident thereof, the Secretary of State shall instruct consular officers performing their duties in the territory of such country to discontinue the issuance of immigrant visas to nationals, citizens, subjects, or residents of such country, until such time as the Attorney General shall inform the Secretary of State that such country has accepted such alien.