**Norman D. MacCAUD, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Norman D. MacCAUD, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

Nos. 1039, 609, Dockets 73–2421, 72–2336.

United States Court of Appeals, Second Circuit.

Argued May 28, 1974.

Decided July 3, 1974.

Daniel J. Weinstein, Buffalo, N. Y., for petitioner.

Lydia E. Morgan, Special Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., for the S. D. N. Y., on the brief), for respondent.

Norman Mueller, Law Student, New Haven, Conn. (Dennis E. Curtis, New Haven, Conn., on the brief), for plaintiff-appellant.

Barry J. Cutler, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., for the District of Connecticut, on the brief), for defendant-appellee.

Before MOORE and FEINBERG, Circuit Judges, and WEINFELD,* District Judge.

FEINBERG, Circuit Judge:

Norman D. MacCaud, an admittedly deportable alien,[1] petitions this court for review of an order of the Board of Immigration Appeals (the Board) dismissing his appeal from a Special Inquiry Officer's decision, which designated Canada as an alternate country of deportation, 8 U.S.C. § 1253(a), and denied his application for withholding of deportation to Canada pursuant to 8 U.S.C. § 1253(h). MacCaud also appeals from a judgment of the United States District Court for the District of Connecticut, Robert C. Zampano, J., 354 F.Supp. 872 (1972), denying his application for a writ of mandamus to compel the Attorney General to notify the Secretary of State that Ireland had refused to accept him as a deportee, in order that the Secretary might then invoke the sanctions

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. For purposes of this proceeding alone, MacCaud admits his liability to deportation, as well as the other allegations contained in the order issued against him to show cause why he should not be deported.

against that country provided for by 8 U.S.C. § 1253(g). MacCaud's appeal and his petition for review were heard together. We dispose of both in this opinion and, for purposes of convenience, will refer to MacCaud throughout as "appellant."

## I

The same facts underlie the appeal and the petition for review. MacCaud is an alien—a native and citizen of Canada —who was previously deported from this country for illegal entry in May 1963. In December 1971, according to the Government's uncontradicted representations, appellant escaped from a Canadian prison and re-entered the United States illegally. Appellant had been serving a sentence in Canada for possession of counterfeit banknotes. After his arrest by the F.B.I. in January 1972, the Immigration and Naturalization Service (the Service) commenced deportation proceedings against him. At a hearing that same month, MacCaud exercised his statutory option to designate in the first instance the place of deportation. 8 U.S.C. § 1253(a). He chose the Republic of Ireland, from which he had obtained a passport in 1971 on the ground that his father had been born in Dublin. The Special Inquiry Officer honored his selection but provided that if Ireland did not accept him in accordance with the governing statute, the hearing would be reopened to allow for the naming of a different country of deportation.

In June 1972, claiming that Ireland had refused to permit MacCaud to enter as a deportee, the Service successfully moved, over appellant's objections, to reopen the proceedings. After a further hearing the Special Inquiry Officer, in December 1972, ordered MacCaud's deportation to Canada if, prior to the time that such deportation could be effected, "the Republic of Ireland has not advised the Attorney General it is willing to accept [appellant] into its territory

. . . ." The Officer's decision also rejected MacCaud's request for relief under 8 U.S.C. § 1253(h), which authorizes the Attorney General to withhold deportation to any country where the alien would meet with political persecution.[2] In September 1973, the Board upheld the order, dismissing MacCaud's appeal.

Meanwhile, in July 1972, MacCaud had filed an action in the United States District Court for the District of Connecticut, seeking an injunction against further deportation proceedings and a writ of mandamus to force the Attorney General to take action against the Irish Republic because of its refusal to accept him. In October, Judge Zampano denied relief to appellant in all respects.

## II

In his petition for review of the Board's ruling,[3] MacCaud protests the designation of Canada as an alternative place of deportation. The governing statute, 8 U.S.C. § 1253(a), reads in pertinent part as follows:

> The deportation of an alien in the United States . . . shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory . . . . If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national or citizen if such country is willing to accept him . . . .

On February 17, 1972, after appellant had exercised his option under the statute by naming Ireland as the country to which he wished to be sent, the Attorney

---

2. During the initial hearing, appellant had announced his intention to make such an application in the event that he were ever ordered sent to Canada. Thereafter, he pressed this claim at the reopened hearing.

3. MacCaud v. I. N. S., Dkt. No. 73–2421.

General—through the Service [4]—fulfilled his duty of inquiry, United States ex rel. Man v. Murff, 264 F.2d 926 (2d Cir. 1959), by forwarding a letter to the Irish Government requesting the requisite travel document for MacCaud. Enclosed were his Irish Republic passport as well as certain pertinent documents, including a Form I–217, Information for Travel Document or Passport, and a Form I–215a affidavit, which MacCaud had completed in April 1963. On these forms appellant had written that his father's place of birth was Scotland and not, as he later maintained, Ireland. (As previously indicated, MacCaud obtained an Irish passport in 1971 by claiming that his father was born in Dublin.) On May 9, 1972, the Consulate General of Ireland informed the United States authorities by letter [5] that the Irish Government had refused to issue a travel document to enable MacCaud to enter as a deportee. The Service thereupon moved to reopen deportation proceedings and, pursuant to the statute, succeeded in having Canada, the country of MacCaud's nationality, declared an alternative place of deportation.

 In the face of Ireland's failure to accept him appellant makes two arguments. First, he contends that the Service did not make a fair and adequate inquiry, United States ex rel. Scala di Felice v. Shaughnessy, 114 F.Supp. 791, 795 (S.D.N.Y.1953), and transmitted incorrect information. Cf. Bong v. Esperdy, 200 F.Supp. 273, 274 (S.D.N.Y.1961). But MacCaud has offered no evidence to show why the challenged data is unreliable. Lacking such proof, he cannot object to the Government's sending of obviously relevant documents, such as the two 1963 forms, merely because they are prejudicial.

 Second, appellant urges that a later communication to him from the Irish Department of Justice, dated November 2, 1972, indicates that Ireland had changed its stance and decided to let him enter. But all that the letter—illegibly signed by an unidentified signer—says is "that if you are in a position to satisfy an immigration officer at a port of entry to this country that you are an Irish citizen you will be admitted whether you are travelling on foot of a deportation order or otherwise." Even ignoring its untimeliness,[6] this note appears to be no more than a restatement of Irish law to the effect that appellant will be admitted *if he can prove his citizenship*, the very fact put in issue by his prior sworn statement (in the Form I–215a affidavit) that his father was born in Scotland. It is scarcely the affirmative acceptance required by section 1253(a). United States ex rel. Wong v. Esperdy, 197 F.Supp. 914, 917 (S.D.N.Y.1961). As Judge Learned Hand remarked: "[I]t would be to the last degree cumbersome and oppressive to shuttle an alien back and forth on the *chance of his acceptance . . . .*" United States ex rel. Man v. Murff, *supra*, 264 F.2d at 928 (emphasis added).

As an additional ground for review, MacCaud contends that the Special Inquiry Officer erred in dismissing without a hearing his claim of persecution under 8 U.S.C. § 1253(h). That provision states:

> The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on ac-

---

4. 8 U.S.C. § 1103(a) charges the Attorney General with the administration and enforcement of the immigration laws. 8 C.F.R. § 2.1 contains a delegation of authority to the Commissioner of Immigration and Naturalization.

5. This letter confirmed a telephone conversation of May 5 between the Deputy Consul General of Ireland and a Service deportation officer.

6. The designated country must express its willingness to take the alien within three months of the original inquiry. 8 U.S.C. § 1253(a). Here, more than eight months had elapsed since the Government sent its letter of February 17, 1972. See Lezos v. Landon, 235 F.2d 581, 583 (9th Cir. 1955).

count of race, religion, or political opinion . . . for such period of time as he deems to be necessary for such reason.

(The implementing regulation, 8 C.F.R. § 242.17(c), is set forth in relevant part in the margin.) [7] Appellant bases his assertion of political persecution on the fear that, if returned to Canada, he will be placed in the prison in which he claims to have been beaten by guards and "will be subjected to solitary confinement and . . . mistreatment on both physical and psychological levels," as he allegedly was in the past. He also predicts that he will be charged with " 'being unlawfully at large in Canada' . . . as well as any other charge which Canada might decide to press for personal and political reasons of persecution." He attributes his former problems in jail to official hostility engendered by his efforts on behalf of prison reform and his legal assistance to other inmates—particularly French Canadian separatists, whom he calls "political prisoners."

 Under the circumstances, we find that there was no abuse of discretion in the rejection of appellant's contention that he would suffer political persecution if he were deported to Canada. The prospect of imprisonment for non-political crimes in the country of deportation does not warrant a stay under 8 U.S.C. § 1253(h), Sovich v. Esperdy, 319 F.2d 21, 28 (2d Cir. 1963); the charges pending against MacCaud in Canada involve escape from prison while serving a sentence involving counterfeiting. Moreover, harsh as the law may be in this area, the possibility that the alien will encounter physical abuse by prison guards on his return is not a basis for statutory relief since the Canadian government does not countenance such activity and since appellant must be regarded as having adequate safeguards under Canadian law. See Kalatjis v. Rosenberg, 305 F.2d 249, 251–252 (9th Cir. 1962). Here, the record reveals that MacCaud's alleged persecutors were prosecuted and acquitted after a jury trial. In addition, appellant admits that Canadian authorities transferred him in 1971 from one prison to another less rigorous institution because of his fear of "being subjected to disciplinary treatment by guards [in the former] he had charged with criminal assault."

 Appellant's attack on the Special Inquiry Officer's refusal to hold a hearing on his section 1253(h) application is also without merit. MacCaud submitted his written claim "setting forth the reasons in support of his request," 8 C.F.R. § 242.17(c), at the reopened hearing on November 7, 1972. At that time, he was informed that his statement—even if factually correct— failed to make out a prima facie case of political persecution.[8] (As we have already indicated, this conclusion was entirely correct.) But the Special Inquiry Officer granted MacCaud three weeks in which to forward additional facts that would warrant conducting a hearing. Despite this extension and ignoring the Officer's specific instructions, appellant never specified the content of his proposed witnesses' testimony. We hold that, on these facts, neither due process nor the applicable regulation, see note 7 supra, which calls for the alien to "be examined under oath on his application" and permits him to "present such perti-

---

7. . . . The respondent shall be advised that pursuant to section 243(h) of the Act he may apply for temporary withholding of deportation to the country or countries specified by the special inquiry officer and may be granted not more than ten days in which to submit his application. The application shall consist of respondent's statement setting forth the reasons in support of his request. The respondent shall be examined under oath on his application and may present such pertinent evidence or information as he has readily available. The respondent has the burden of satisfying the special inquiry officer that he would be subject to persecution on account of race, religion, or political opinion as claimed. . . .
8 C.F.R. § 242.17(c).

8. The applicant "has the burden of satisfying the special inquiry officer" that his claim is meritorious. See note 7 supra.

nent evidence or information as he has readily available," requires that a further hearing be held.

In sum: Since the Service correctly designated Canada as an alternate country of deportation, 8 U.S.C. § 1253(a), and properly refused to suspend deportation on grounds of political persecution, 8 U.S.C. § 1253(h), we deny MacCaud's petition for review.

### III

■ The appeal from Judge Zampano's decision,[9] 354 F.Supp. 872 (D.Conn. 1972), requires little discussion. It involves a seldom used statute,[10] 8 U.S.C. § 1253(g), which provides:

> Upon the notification by the Attorney General that any country upon request denies or unduly delays acceptance of the return of any alien who is a national, citizen, subject, or resident thereof, the Secretary of State shall instruct consular officers performing their duties in the territory of such country to discontinue the issuance of immigrant visas to nationals, citizens, subjects, or residents of such country, until such time as the Attorney General shall inform the Secretary of State that such country has accepted such alien.

MacCaud disputes the district judge's finding that mandamus will not lie to force the Attorney General to give notice under this section so that the Secretary of State may act against the offending country.[11] We agree with the judge, however, and uphold his denial of the writ.

Section 1253(g) has apparently never been construed. It authorizes the Executive Branch to invoke powerful sanctions to dissuade foreign governments from unlawfully refusing to accept American deportees. In light of the potential impact of such penalties upon delicate aspects of international relations, it is hardly likely that Congress intended to make the stated notification a mere ministerial duty of the Attorney General. The administrative history of the section, which shows that it has rarely been applied and then only to a few Communist-bloc countries, Gordon & Rosenfield, supra note 10; 8 C.F.R. § 243.8, seems to support this view.[12] Finally, since Ireland may well have acted properly in refusing to accept MacCaud because his status as an Irish citizen is doubtful at best, see discussion, Part II supra, this is hardly the occasion for an order requiring the Attorney General to initiate such drastic action.[13]

Accordingly, we affirm the decision of the district court denying the petition for a writ of mandamus.

9. MacCaud v. United States, Dkt. No. 72–2336.

10. 1 Gordon & Rosenfield, Immigration Law and Procedure § 3.8a, at 3–57; § 5.19, at 5–146 & n. 7 (rev. ed. 1973).

11. The judge's denial of injunctive relief, 354 F.Supp. at 873, is not before this court.

12. Appellant's references to statements of opponents of this section at the legislative hearings fail to persuade us. Joint Hearings on S. 716, H.R. 2379 and H.R. 2816 Before the Subcomm. of the Comm. on the Judiciary, 82d Cong., 1st Sess. 449, 581, 628. Cf. Note, The Internal Security Act of 1950, 51 Colum.L.Rev. 606, 636 & n. 290 (1951). None of these persons were members of Congress or occupied any official status relative to the proposed bills. Generally, the meager legislative history of this provision sheds no light upon our issue. See, e. g., 1950 U.S.Code Cong.Serv. p. 3911, quoting Conf.Rep.No.3112, 81st Cong., 2d Sess. (1950).

13. In view of our disposition of the case, we do not reach the question whether MacCaud has standing to prosecute a mandamus action. See Brief for Appellant at 12–15.