YAN WO CHENG and Lai On Cheng,
Plaintiffs,

v.

Dominick RINALDI, as District Director
of the Immigration and Naturalization
Service of New Jersey, Defendant.

Civ. A No. 74–1885.

United States District Court,
D. New Jersey.

Feb. 5, 1975.

Jules E. Coven, New York City, Allan
S. Berger, East Orange, N. J., for plain-
tiffs.

Jonathan L. Goldstein, U. S. Atty. by
George E. Mittleholzer, Asst. U. S.
Atty., Newark, N. J., for defendant.

OPINION

LACEY, District Judge:

Plaintiffs, claiming to be citizens of
the Peoples Republic of China, sue to en-
join their deportation and for asylum in
the United States. A temporary re-
straining order issued upon commence-
ment of suit and, by consent, is still ef-
fective. Plaintiffs now move for a pre-

liminary injunction and defendant cross-moves for dismissal of the complaint and, in the alternative, for summary judgment.

At the outset, I shall address defendant's claim that judicial review of the challenged agency determination cannot be had in this court because plaintiffs seek review of proceedings that are part and parcel of the deportation hearing authorized by Section 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252 (1970), judicial review of which is exclusively vested in the Court of Appeals, 8 U.S.C. § 1105a (1970); Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964); Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). I conclude that this court can consider the issues raised by the parties in that the proceedings herein are ancillary to the statutory deportation hearing and therefore may be reviewed by this court. *See* 8 U.S.C. § 1329 (1970); Cheng Fan Kwok v. Immigration and Naturalization Service, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); Ming v. Marks, 367 F. Supp. 673 (S.D.N.Y.1973); Kan Kam Lin v. Rinaldi, 361 F.Supp. 177 (D.N.J. 1973), aff'd, 493 F.2d 1229 (3d Cir.), **cert. denied, 419 U.S. 874, 95 S.** Ct. 136, 42 L.Ed.2d 113 (1974); Buckley v. Gibney, 332 F.Supp. 790 (S.D.N.Y.), aff'd, 449 F.2d 1305 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 946, 30 L. Ed.2d 789 (1972); Ching Ho Mui v. Rinaldi, 262 F.Supp. 258 (D.N.J.1966), aff'd, 408 F.2d 28 (3d Cir.), cert. denied, 395 U.S. 963, 89 S.Ct. 2101, 23 L. Ed.2d 748 (1969).

## FACTUAL BACKGROUND

Both plaintiffs departed from China in 1961 (Pffs' Memorandum, 1), allegedly because of communist persecution, going first to Hong Kong and thereafter to the United States. Cplt., para. 7; Coven Affidavit, para. 9. Plaintiffs are or were seamen and had been issued a Hong Kong Seaman's Identity Book, permitting them at will to enter, leave or stay in Hong Kong. Friess Affidavit, paras. 4(viii) and 5(vii).

Lai On Cheng surreptitiously entered the United States in 1970 from Canada, and therefore illegally. 8 U.S.C. § 1251(a)(2) (1970). Yan Wo Cheng was permitted to enter the United States in December 1971 at Los Angeles, California, as a non-immigrant crewman, while his ship was in port, for a period not to exceed 29 days. 8 U.S.C. § 1282 (1970). After entry he left his ship, and remained in the United States beyond the authorized period. Thus his presence here became illegal in January 1972.

Deportation proceedings were commenced against both plaintiffs on February 16, 1973, culminating in a hearing and the Special Inquiry Officer's March 30, 1973 decision ordering deportation, subject to voluntary departure, as plaintiffs requested, on or before May 15, 1973. 8 U.S.C. § 1252 (1970). At the hearing, where plaintiffs and three other Chinese aliens were represented by plaintiffs' counsel herein, plaintiffs admitted their illegal status and conceded deportability. *See* Appendix A. They saw fit to refrain from requesting asylum at that juncture, for reasons about which we can only speculate. They accepted Hong Kong as a place to which they would voluntarily depart. They disclaimed any intention of seeking deferment of deportation because of political persecution there. They sought no review of the Special Inquiry Officer's determination.[1] *Cf.* 8 C.F.R. § 242.21 (1974); Kan Kam Lin v. Rinaldi, 361 F.Supp. at 187 n. 9.

Predictably, plaintiffs did not voluntarily depart on May 15, 1973. There is nothing to suggest that plaintiffs voluntarily brought their failure to do so to the attention of INS. In November 1974, a year and one-half later, INS wrote both plaintiffs to report on December 3, 1974 for deportation to Hong Kong.

---

1. *See* Appendix A.

Plaintiffs, as in Ming v. Marks, *supra,* and *Kan Kam Lin, supra,* then applied to the INS for asylum and a stay of deportation, in pertinent part as follows:

. . . That I was born in Foochow, China and that I fled from China because of the Communist control of my "home country". That it is my belief that China is my "home country" and I am, therefore, entitled to a stay of deportation based upon the Operations Instructions 108.1 and 108.2. That China is the country of my birth and nationality and I have not become firmly resettled in any other country.

By letter of December 4, 1974 to Yan Wo Cheng, the application was denied:[2]

Dear Sir:

Reference is made to your request for political asylum and temporary refuge in the United States pursuant to the terms of the Treaty "Protocol relating to the Status of Refugees", and the Policy Statement of the Secretary of State of January 4, 1972. It is noted that you are unlawfully in the United States because you entered solely as a crewman for shore leave and remained longer than 29 days or the period your vessel remained in the United States.

Because of the foregoing it has been concluded after due hearing that you are deportable from the United States and it is not proposed to deport you to any other country where you would be in danger of persecution; it is proposed to deport you to Hong Kong. You have failed to establish that you have not been firmly resettled in Hong Kong.

After careful consideration and general guidelines from the Department of State, it has been concluded that you should not be exempted from regular immigration procedures since you have failed to establish pursuant to Article 1(a)(2) and Article 32(1) of the Treaty, that you are a refugee lawfully in the United States and that you would be persecuted on account of race, religion, nationality or membership of a particular social group, or political opinion, if returned to Hong Kong. Therefore your request for a stay of deportation (Form 1–246) has been denied.

If you desire not to withdraw your request for political asylum, you may file a motion to reopen your deportation proceedings to continue your request under Section 243(h) of the Immigration and Nationality Act.

Sincerely,

Dominick F. Rinaldi
District Director

■ To the extent that this case involves nothing more than the issue of asylum founded upon the aforesaid provisions of the Treaty Protocol and the State Department Policy Statement, it is controlled by *Kan Kam Lin, supra.* Thus, since plaintiffs are in the United States unlawfully, they are not entitled to asylum under those provisions.

Plaintiffs' counsel, however, with affirmance of *Kan Kam Lin, supra,* by the Court of Appeals, abandoned in this case the approach taken in that case[3] and in Ming v. Marks, *supra.* Instead, he claims for his clients here the right of asylum allegedly created by certain Operations Instructions [hereinafter sometimes referred to as OI][4] of the Immigration and Naturalization Service. For the reasons hereinafter set forth, I find that these create no right of asylum, but simply set forth instructions for imple-

---

**2.** The letter to Lai On Cheng is substantially the same. The significance of the letters lies in their reflecting the agency decision that plaintiffs would not be persecuted when deported to their "home country", defined as the "country in which [one] is firmly resettled." INS Operations Instruction 108.1(g).

**3.** In *Kan Kam Lin,* 361 F.Supp. at 179–182, plaintiffs applied for a stay of deportation

and asylum based on the Treaty Protocol and the Policy Statement of the Secretary of State dated January 4, 1972.

**4.** *See* notes 6, 7 and 8, *infra.* At my request, following oral argument, the Operations Instructions were presented to me for review.

menting the right of asylum granted by the Act's § 243(h), 8 U.S.C. § 1253(h) (1970),[5] and State Department Policy Statement and Treaty Protocol.

Administration and enforcement of immigration and naturalization laws lie with the Attorney General of the United States. 8 U.S.C. § 1103(a) (1970). His authority enables him to promulgate rules and regulations affecting the processing of aliens:

He shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter. . . .

*Id.*

Pursuant to § 1103(a), and authority delegated to him, 8 C.F.R. § 2.1 (1974);

Buckley v. Gibney, *supra,* the aforesaid Operations Instructions have been promulgated by the Commissioner of Immigration and Naturalization. They are found in an INS publication entitled: "CURRENT LAWS; TITLE 8, CODE OF FEDERAL REGULATION; OPERATIONS INSTRUCTIONS; AND INTERPRETATIONS" [hereinafter cited as CURRENT LAWS].

Some of the instructions are not available to the public, others are. *See* 8 C. F.R. § 103.9 (1974); CURRENT LAWS General Explanation, para. 2.

The specific instructions plaintiffs rely upon were adopted July 26, 1972. CURRENT LAWS, at p. 618.11. Instructions 108.1(f) et seq. pertain to "Aliens within the United States". There are three subsections under this Heading: (1) Asylum request prior to deportation hearing;[6] (2) Asylum re-

---

5. 8 U.S.C. § 1253(h) (1970) provides:
The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason.

6. OI 108.1(f)(1) states:
. . . Any alien within the United States who requests asylum, including a crewman or stowaway, shall be interviewed as set forth in OI 108.1(a).
If the District Director is satisfied as to the validity of an alien's contention that he would be subject to persecution if he returns to his home country, the alien shall, if eligible therefor, be granted extension of stay or adjustment of status. If extension or adjustment is not available to him, voluntary departure in increments of a year with permission to work shall be granted. If an alien is not eligible to adjust to permanent resident status, such as a crewman or native of the Western Hemisphere, he shall be furnished appropriate advice concerning the procedure for obtaining an immigrant visa. Each case shall be reviewed on an annual basis to determine if the facts surrounding the alien's claim to political asylum continue to exist. If so, his eligibility for administrative relief shall again be reviewed.
A qualified alien from a Communist or Communist-dominated country or a coun-

try within the general area of the Middle East as defined in section 203(a)(7) of the Act should be considered for the benefits of the proviso to that section, and if it appears he will become eligible thereunder, he shall be placed in voluntary departure status until he acquires the necessary residence in the United States.
In any case in which, after preliminary interview, it appears that there is clearly no basis for the alien's contention that he would be persecuted if he returns to his home country, he shall be so informed. However, he shall be given an opportunity to apply for extension of stay or adjustment of status, if otherwise eligible. In any case in which the alien does not withdraw his request for asylum he shall be interviewed in depth and the District Director shall furnish full particulars by letter to the Office of Refugee and Migration Affairs, Department of State. No further action shall be taken in the alien's case until the views of that office have been received and considered by the District Director. If the Department of State recommends favorably but an adverse decision is entered by the District Director, the case shall be referred for review to the Regional Commissioner. If the Regional Commissioner agrees with the District Director's decision, the matter shall be referred to the Office of Travel Control, Central Office, for review.
In any case in which an adverse decision is entered and the alien does not withdraw his request and deportation proceedings

quest during course of deportation hearing;[7] and (3) Asylum request after completion of deportation hearing.[8]

When an asylum request is submitted prior to a deportation hearing, both the District Director and the Office of Refugee and Migration Affairs of the State Department review the application. If the District Director denies the application but the state Department recommends it, the case is thereafter reviewed by the INS Regional Commissioner. If he agrees with the District Director's adverse determination, the case proceeds to further review before the Office of Travel Control of INS. Instruction

108.1(f)(1) also requires that, where the decision is adverse to the alien, he should be advised that he may apply to the Special Inquiry Officer during his deportation hearing for asylum and withholding of deportation pursuant to § 243(h) of the Act, 8 U.S.C. § 1253(h) (1970).

When asylum is requested during the deportation hearing, the Special Inquiry Officer must terminate the hearing pending decision by the District Director on the application for asylum. Here too the District Director must submit the details of the matter to the Office of Refugee and Migration Affairs. If the

are to be initiated, it shall be made clear to the alien that during the course of the hearing he will have an opportunity to apply for withholding of deportation under section 243(h) of the Act.

If after issuance of an order to show cause and prior to commencement of hearing an alien requests asylum, the procedures set forth in the immediately preceding paragraphs shall apply, and a hearing shall not be scheduled until action on the request has been completed.

7. OI 108.1(f)(2) provides:

. . . In any case in which deportation proceedings have been initiated and the alien or his representative introduces a request for asylum, the special inquiry officer shall postpone the hearing to enable the District Director to fully consider the bona fides of the request. If the District Director determines that asylum should be granted, the special inquiry officer shall be requested to terminate the proceeding and the alien shall be granted voluntary departure in increments of a year with permission to work. Each case shall be reviewed annually to determine if the need for asylum continues to exist and if any administrative remedy may be available to the subject.

In any case in which, after preliminary interview, it appears that there is clearly no basis for the alien's contention that he would be persecuted if he returns to his home country, he shall be so informed and advised that he may present an application to the special inquiry officer for withholding of deportation under section 243(h) of the Act. In any such case in which the alien does not withdraw his request for asylum and indicates that he desires to present an application for withholding of deportation he shall be interviewed in in depth and the District Director shall

furnish full particulars by letter to the Office of Refugee and Migration Affairs, Department of State. No further action shall be taken in the alien's case until the views of that office have been received and presented to the special inquiry officer for consideration.

8. OI 108.1(f)(3) states:

. . . In any case in which an alien requests asylum after completion of a deportation hearing, the district director shall fully consider the bona fides of the request. If the district director determines that asylum should be granted, the alien should be granted extension of voluntary departure or stay of deportation in increments of a year with permission to work. Each such case shall be reviewed annually to determine if the need for asylum continues to exist and if any administrative remedy may be available to the subject.

On the other hand, if it appears after preliminary interview that there is clearly no basis for the alien's contention that he will be persecuted if he returns to his home country, he shall be so informed. In any such case in which the alien does not withdraw his request for asylum, he shall then be interviewed in depth and the district director shall furnish full particulars of the case to the Office of Refugee and Migration Affairs, by letter. No further action shall be taken until the views of that office have been received and considered by the district director. If the district director then finds adversely in the case and the alien does not withdraw his request for asylum, he shall be advised that he may, if he so desires, request reopening of his hearing before a special inquiry officer for the purpose of introducing an application to withhold deportation under section 243(h) of the Act.

District Director ultimately decides adversely to the request for asylum, once again, the alien must be informed that he may move before the Special Inquiry Officer for asylum and withholding of deportation under § 243(h).

If application for asylum is made after the deportation hearing, as here, the District Director is also required to present the case to the Office of Refugee and Migration Affairs. OI 108.-1(f)(3). This subsection then provides:

> No further action shall be taken until the views of that office have been received and considered by the district director. If the district director then finds adversely in the case and the alien does not withdraw his request for asylum, he shall be advised that he may, if he so desires, request reopening of his hearing before a special inquiry officer for the purpose of introducing an application to withhold deportation under section 243(h) of the Act.

On February 14, 1973, by internal agency memorandum, INS advised its District Directors that the State Department had announced that it would no longer entertain asylum requests from aliens who had left Communist China and resided for a substantial period of time in Hong Kong before arriving in the United States.[9] Thus the Operations Instructions provisions for review by the Office of Refugee and Migration Affairs were made inoperative. The same memorandum, it should be noted, expressly indicated that the new State Department policy did not otherwise affect the asylum procedures of Instruction 108.1(f).

Plaintiffs, in claiming a substantive right to asylum under the Operations Instructions, do not assert a deprivation of procedural due process as to the aforesaid State Department policy revision. Instead they contend simply and without elaboration that the District Director's decision was arbitrary and capricious. Nevertheless I shall analyze this policy change in the light of due process requirements.

The Administrative Procedure Act (APA) provides for the publication in the Federal Register of certain proposed rule-making by administrative agencies. 5 U.S.C. § 553(b) (1970); *cf.* International Telephone and Telegraph Corp. v. Local 134, IBEW, 419 U.S. 428, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975). Excepted is proposed rule-making involving "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice . . . ." 5 U.S.C. § 553(b) (1970). The Operations Instructions are nothing more than intra-agency guidelines for the disposition by the INS of requests for asylum. The February 14, 1973

---

9. This memorandum states in relevant part:

The Central Office, after consultation with the Department of State, has been informed that there is no likelihood that citizens of the Peoples' Republic of China who fled to Hong Kong and have resided there for a substantial period of time will be persecuted within the meaning of the Convention on Refugees if they are deported to Hong Kong, nor is there any specific reason to believe that such persons will be returned by the Government of Hong Kong to countries where they will face persecution. The policy of the Department of State is to deny requests for asylum from such aliens provided they are deported to Hong Kong and not the Peoples' Republic of China and that the British Crown Colony of Hong Kong will accept them. Last minute requests concerning return of Chinese to Hong Kong as described above can be handled by this Service without consultation with the Department of State. It must be understood, however, that such aliens will have the benefits available to them in deportation hearings including that of withholding deportation under section 243(h) and the application of the Convention on Refugees where that is appropriate.

Any questions concerning individual asylum requests in a case which appears to be politically sensitive may be telephoned to the Department of State or handled in writing on an urgent basis by that organization.

Any other case not within the above or not within some other specific exception will continue to be handled under outstanding instructions. Any questions of interpretation should be referred to Travel Control, Central Office, for clarification.

memorandum was both a statement of policy and an alteration of rules of procedure well within the aforesaid exception to the publishing requirement. Since Instructions 108.1(f) et seq. create no substantive rights (and indeed were not themselves deemed subject to the APA publication requirement by INS), INS could properly issue an unpublished intra-agency directive revising these instructions by directing District Directors not to submit the details of certain requests for asylum to the State Department in view of the blanket policy announced by the latter in so-called Hong Kong cases. *Cf.* Lewis-Mota v. Secretary of Labor, 469 F.2d 478 (2d Cir. 1972); Hou Ching Chow v. Attorney General, 362 F.Supp. 1288 (D.D.C. 1973).[10]

Moreover, the petitioner for asylum under the instructions as revised continues to have State Department views imparted to the District Director, albeit in advance, in those cases which are within the category designated by the February 14, 1973 memorandum. Thus the procedural revision does not amount to a deprivation of due process.

■ Reverting to plaintiffs' contention that Operations Instructions 108.1(f) et seq. are the source of their right to asylum, as I have stated, I can only conclude from my close review that these are instructions to INS personnel for processing requests for asylum as provided by § 243(h) and Treaty Protocol and State Department Policy Statement.

While the label which an agency attaches to its regulations is not necessarily dispositive, Lewis-Mota v. Secretary of Labor, 469 F.2d at 481–482, INS, it is noted, considers its Operations Instructions to be "internal directives". CURRENT LAWS, General Explanation, para. 1. This view is in accordance with recent judicial analysis. In Buckley v.

Gibney, 332 F.Supp. at 796, the court concluding that the Operations Instructions were merely procedural, stated:

> Buckley is not being deported . . . under any Operations Instructions; he is being deported under the statute, 8 U.S.C. § 1251(a)(2), because he is illegally in the country. These Operations Instructions affect Buckley only insofar as they serve as a guide in considering his request for voluntary departure . . . . .

*See also* Fan Wan Keung v. Immigration and Naturalization Service, 434 F.2d 301 (2d Cir. 1970); United States ex rel. Fen v. Esperdy, 423 F.2d 6 (2d Cir. 1970).

Accordingly, plaintiffs' endeavors to evade the rule of *Kan Kam Lin* are futile. They are here illegally; therefore, they are not entitled to claim a right to the asylum created by the Treaty Protocol and the Policy Statement. Their application was properly rejected. It follows that their claim that the District Director's decision was arbitrary and capricious falls.

■ While this opinion might well end here, it is appropriate that, in contemplation of possible appellate review, I express my views on plaintiffs' position, if *arguendo* the Operations Instructions create substantive rights. Then this court could not review the deportation proceedings conducted to date. Contrary to plaintiffs' complaint, they have not exhausted their administrative remedies; therefore, they are not entitled to judicial review of the District Director's decision. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). *See also* Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); McKart v. United States, 395 U.S. 185, 194–195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Diapulse Corp. v. FDA, 500 F.2d 75, 77–78 (2d Cir.

---

10. Again, it is noted that plaintiffs do not complain that they were deprived of State Department review. Parenthetically, although the Operations Instructions were not published, plaintiffs' counsel demonstrated his knowledge of them by setting them forth in his Memorandum of Law.

1974); Waddell v. Alldredge, 480 F.2d 1078 (3d Cir. 1973); Bristol-Myers Co. v. FTC, 469 F.2d 1116 (2d Cir. 1972).

█ The exhaustion doctrine has achieved statutory recognition in the field of immigration law:

> An order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations . . . .

8 U.S.C. § 1105a(c) (1970). The failure to exhaust administrative remedies available in deportation proceedings has been uniformly held to preclude judicial review. *See, e. g.,* Forster v. Immigration and Naturalization Service, 452 F. 2d 418 (9th Cir. 1971); Favela v. Immigration and Naturalization Service, 420 F.2d 575 (9th Cir. 1969), cert. denied, 398 U.S. 910, 90 S.Ct. 1705, 26 L.Ed.2d 70 (1970); Arias-Alonso v. Immigration and Naturalization Service, 391 F.2d 400 (5th Cir. 1968); Arrias v. Immigration and Naturalization Service, 386 F.2d 191 (9th Cir. 1967); Samala v. Immigration and Naturalization Service, 336 F.2d 7 (5th Cir. 1964); Rodriguez-De Leon v. Immigration and Naturalization Service, 324 F.2d 311 (9th Cir. 1963); Kassab v. Immigration and Naturalization Service, 322 F.2d 824 (9th Cir. 1963), cert. denied 376 U.S. 910, 84 S.Ct. 665, 11 L. Ed.2d 608 (1964); Murillo-Aguilera v. Immigration and Naturalization Service, 313 F.2d 141 (9th Cir. 1963). Accordingly, the failure to exhaust administrative remedies warrants dismissal of an action seeking judicial review of a District Director's determination. In Ja Kim v. Immigration and Naturalization Service, 403 F.2d 636 (7th Cir. 1968).

Lack of exhaustion is evident. During the deportation hearing before the Special Inquiry Officer, plaintiffs herein could have presented their claim for asylum pursuant to Instruction 108.1(f)(2) to the District Director, and if his decision was adverse, by moving before the Special Inquiry Officer for withholding of deportation under § 243(h) of the Act. 8 C.F.R. § 242.17(c), (d) (1974). Thereafter, review by the Board of Immigration Appeals would have been available, if application was made within ten days of the decision of the Special Inquiry Officer. 8 C.F.R. §§ 3.1(b); 242.21 (1974); Fan Wan Keung v. Immigration and Naturalization Service, 434 F.2d at 302.

Instead of timely pursuit of the above remedies, MacCaud v. United States, 354 F.Supp. 872 (D.Conn.1972), aff'd, 500 F.2d 355 (2d Cir. 1974), plaintiffs, after expressly declining the opportunity for a § 243(h) application before the Special Inquiry Officer, waited until long after the conclusion of the deportation hearing and then instituted a separate proceeding before the District Director for a stay of deportation and asylum. His adverse determination was not the last word administratively. As his decision letter to them stated, plaintiffs next had available the reopening of their deportation hearing for presentation of their asylum claim and for withholding of deportation under § 243(h) of the Act. OI 108.1(f)(3). They then had available review before the Board of Immigration Appeals, within ten days, from an adverse decision of the Special Inquiry Officer. 8 C.F.R. §§ 3.1(b); 242.21 (1974).

Plaintiffs here came directly to this court after the District Director's decision. They failed to exhaust their administrative remedies. Thus, even if the Operations Instructions created a substantive right to asylum, this court would lack subject matter jurisdiction over this suit.

The foregoing constitutes my findings of fact and conclusions of law. Defendant's motions for summary judgment are granted. Submit an order on 3 days notice.

### EPILOGUE

While the foregoing opinion is grounded solely upon the facts and law of this case, I consider that I have a

duty to draw attention to the following matters.

I have reviewed the files in this court which together comprise *Kan Kam Lin* (Civ. Nos. 1823 and 1862–72; 167 and 282–73). Their pattern is a depressing one. Each of the seven plaintiffs included in those suits was in this country illegally, each claimed he fled from Communist China (1961 is a popular year for flight), each spent some time in Hong Kong (but allegedly never enough to lose his Chinese citizenship), and each was finally caught by the terribly undermanned INS. Once apprehended, each plaintiff then utilized every agency and court procedural device to the end that maximum delay ensued. Two to three years had elapsed since plaintiffs therein under oath admitted to a Special Inquiry Officer that they were deportable because they were in this country illegally, stated they would voluntarily depart (within a matter of weeks), and assured the Inquiry Officer that "no 243(h) application would be made." Thereafter, as in the case at bar, their sworn oaths to depart voluntarily were breached, months passed until INS came around to them—or apprehended them —and arranged for involuntary departure, and then, and only then did they assert a claim for asylum.

It is pure sophistry, of course, to argue that there is no inconsistency between seeking asylum (as they did) under the Policy Statement and Treaty Protocol, and swearing (as they did) that no 243(h) application would be filed. However, even if there is a technical distinction, candor from counsel would certainly be appropriate, if not mandated, in the face of the direct question put by the Special Inquiry Officer regarding § 243(h), so that counsel could respond: "No, but we do intend to make an application under the Treaty Protocol and Policy Statement." Then the voluntary departure date which, I fear, plaintiffs in many cases never intend to keep anyway, could be deferred pending a determination on the asylum application.

Moreover, as I review the record, there is absolutely no reason why learned counsel in *Kan Kam Lin* could not have made his § 243(h) application to the Special Inquiry Officer right at the deportation hearing when asked if such an application was going to be made. In the last analysis, facts advanced by counsel to obtain asylum subsequent to the deportation hearing were known to him at the time of that hearing. The files therein do not suggest that circumstances changed between the date of the deportation hearing and the filing of the application for asylum. The only purpose served by plaintiffs' method of proceeding was the undesirable attenuation of the administrative, and later, the judicial process.

The same program of delay is seen in the matter before me. Attached as an Appendix to this opinion is the transcript of plaintiffs' deportation hearing. As I have noted, deportability was conceded, no request for asylum was made, and deportation was avoided by agreeing to depart voluntarily for Hong Kong by a day certain. The Special Inquiry Officer clearly was led to believe asylum would not be sought. Each plaintiff and his counsel herein were specifically given Hong Kong as a place to which they would be deported. In neither case was there any objection raised. In neither case was it suggested that plaintiffs would not be received in Hong Kong.

It is certainly about time something is done. Legislation is one means to remedy this shocking situation. Also, INS should review its hearing procedures and close off the loop-holes now being exploited. Finally, the United States Attorney should review the transcripts of the deportation hearing in this case, as well as others where the same technique is pursued over and

over again, to determine if the criminal laws have been violated.[11]

## APPENDIX A

HEARING HELD ON March 30, 1973—
IMMIGRATION JUDGE TO THE FIRST RESPONDENT:

Q. What is your name sir?

A. Lai On Cheng.

IMMIGRATION JUDGE TO THE SECOND RESPONDENT:

Q. Your name, sir?

A. Lee Chung To.

IMMIGRATION JUDGE TO THE THIRD RESPONDENT:

Q. Your name, sir?

A. Hon Hung Yun.

IMMIGRATION JUDGE TO THE FOURTH RESPONDENT:

Q. Your name, sir?

A. Siu Po Lam.

IMMIGRATION JUDGE TO THE FIFTH RESPONDENT:

Q. Your name, sir?

A. Cheng Yan Wo.

IMMIGRATION JUDGE TO ALL RESPONDENTS THROUGH INTERPRETER:

You are all here today to be given a hearing. In this hearing I decide whether you have the legal right to be in the United States any longer and whether you should be deported or not. Do you all understand the purpose of the hearing?

ANSWER BY ALL RESPONDENTS THROUGH INTERPRETER:

A. Yes, we do.

IMMIGRATION JUDGE TO ALL RESPONDENTS THROUGH INTERPRETER:

Will you all please stand and raise your right hands to be sworn. Do you all swear that all the testimony you will give at this hearing will be the truth, the whole truth, and nothing but the truth, so help you God?

ALL RESPONDENTS THROUGH INTERPRETER:

A. Yes, we do.

IMMIGRATION JUDGE TO ALL RESPONDENTS THROUGH INTERPRETER:

Q. Is this your lawyer who is here with you now?

A. Yes, sir.

IMMIGRATION JUDGE TO COUNSEL:

Counsel I have here five Orders to Show Cause issued by the Immigration and Naturalization Service. In the name of each of the respondents I ask if you will acknowledge that each of them were served with a copy.

COUNSEL COVEN:

Yes, sir.

IMMIGRATION JUDGE TO COUNSEL:

These Orders, as you will note, have in them statements of fact numbered one through five, are they all admitted to be true and correct?

COUNSEL COVEN:

Yes, sir.

IMMIGRATION JUDGE TO COUNSEL:

Are you further prepared to admit that each of them is illegally here as charged

---

11. It is noted that plaintiffs also claimed asylum and a stay of deportation pursuant to Operations Instruction 108.2. This is a special provision relating to Cuban refugees and as such is inapplicable to plaintiffs herein. In this court, counsel for plaintiffs relies upon this Instruction only for the purpose of demonstrating that substantive rights are created by the Operations Instructions. However, as I have hereinbefore indicated, the Operations Instructions create no substantive rights and hence Instruction 108.2 does not improve plaintiffs' position before this court.

in their respective Orders to Show Cause?

A. Yes, sir.

What is your application, sir?

A. Voluntary departure.

**COUNSEL COVEN TO ALL RESPONDENTS THROUGH INTERPRETER:**

Q. Have any of you ever been arrested by the police any place in the world?

A. No.

Q. Have any of you ever been a member of the Communist Party?

A. No.

Q. Are you all willing to leave the United States voluntarily and without expense to the United States Government?

A. Yes, sir.

Q. Would you all go to Hong Kong?

A. Yes, sir.

Q. Do you all have sufficient money to purchase a ticket to go to Hong Kong?

A. Yes, sir.

Q. Would you all be willing to leave by May 5, 1973?

A. Yes, sir.

**IMMIGRATION JUDGE:**

I have no further questions.

**IMMIGRATION JUDGE TO RESPONDENTS THROUGH INTERPRETER:**

Q. Do you understand that if you don't leave when you are supposed to you can be deported?

A. Yes, sir.

Q. If that should ever happen for any reason, what country do you choose?

**COUNSEL COVEN FOR RESPONDENTS:**

No designation by all.

**IMMIGRATION JUDGE TO RESPONDENT #1:**

Q.. Where did you live before you came to the United States?

**COUNSEL COVEN FOR RESPONDENT #1:**

Respondent #1, Lai On Cheng, we will consent to Hong Kong being named as the place of deportation in the alternative and no 243(h) as to Taiwan or Hong Kong.

**IMMIGRATION JUDGE:**

Next.

**COUNSEL:**

Lee Chung To—Consent to the naming of Hong Kong as an alternative country of deportation. Hon Hung Yun—Respondent #3, no designation, apparently he was born in Hong Kong so Hong Kong is the proper place.

**IMMIGRATION JUDGE:**

Siu Po Lam?

**COUNSEL:**

Same concession as in the first two, we will consent to the naming of Hong Kong as the alternate place of deportation, in the alternative no 243(h) as to either the country of nationality or Hong Kong. As to the last one, Cheng Yan Wo, we will consent to the naming of Hong Kong in the alternative, after nationality.

**IMMIGRATION JUDGE:**

Have any of you gentlemen ever been in the United States before and stayed here illegally?

**RESPONDENTS THROUGH INTERPRETER:**

No, sir.

**IMMIGRATION JUDGE THROUGH INTERPRETER:**

Mr. Lai On Cheng, did you come to Canada on a ship?

**RESPONDENT THROUGH INTERPRETER:**

A. Yes, sir.

IMMIGRATION JUDGE:

How did you get across the border?

A. By car.

IMMIGRATION JUDGE THROUGH INTERPRETER:

Did you pay somebody to bring you down here?

RESPONDENT THROUGH INTERPRETER:

$600.00 I paid for getting me here.

IMMIGRATION JUDGE TO ALL RESPONDENTS THROUGH INTERPRETER:

Do you promise you will never violate the laws of this country again, all five of you?

A. Yes, sir.

IMMIGRATION JUDGE TO RESPONDENT #1:

Mr. Lai On Cheng, your case is different from the others, but as I am hearing you all together, I will give you the same relief as the other people. What you have done is a serious violation of law, do you understand me?

A. Yes, sir.

IMMIGRATION JUDGE TO ALL RESPONDENTS THROUGH INTERPRETER:

Gentlemen, here is a copy of my decision, it says you have permission from me to leave the United States on or before May 15, 1973. Do you all understand that?

A. Yes, sir.

IMMIGRATION JUDGE TO ALL RESPONDENTS THROUGH INTERPRETER:

You are all deported to Taiwan first if that country will accept you, otherwise to Hong Kong, other than Mr. Hon Hung Yun who is deported only to Hong Kong. Do you all understand that?

A. Yes, sir.

Counsel do you waive appeal?

A. Yes, sir.